Filed 4/9/26  P. v. Mesa CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JAMES ISAAC MESA,<br><br>        Defendant and Appellant. | A171120<br><br>(Sonoma County<br>Super. Ct. No. SCR4529271) |

In 2005, defendant James Isaac Mesa was sentenced to 54 years in state prison after he was convicted of numerous crimes that he committed on four different days in the same week.  Because Mesa's sentence included prison priors that a change in the law subsequently invalidated, the trial court recalled Mesa's sentence in 2024 and resentenced him to 43 years 4 months in prison.  Mesa appeals, contending that the court erred in failing to further reduce his sentence based on other changes in the law.  He further contends that the court abused its discretion in declining to dismiss his prior strike conviction under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).  We disagree and affirm.

## I.  BACKGROUND

### A.  Procedural History

An information charged Mesa with 12 counts based on offenses he

1

allegedly committed in November 2004 against multiple victims:
(1) attempted murder of Jason Mitchell (Pen. Code,[1] §§ 664, 187, subd. (a);
count I); (2) assault with a firearm as to Jason (§ 245, subd. (a)(2); count II);
(3) unlawful possession of a firearm by a felon (§ 12021, subd. (a)(1);
count III); (4) carjacking as to Richard Mitchell (§ 215, subd. (a); count IV);
(5) robbery as to Richard (§ 211, count V); (6) assault with a firearm as to
Richard (§ 245, subd. (a)(2); count VI); (7) vehicle theft as to Richard (§ 10851,
subd. (a); count VII); (8) unlawful possession of a firearm by a felon (§ 12021,
subd. (a)(1); count VIII); (9) attempted murder of Joseph Mesa[2] (§§ 664, 187,
subd. (a); count IX); (10) assault with a firearm as to Joseph (§ 245, subd.
(a)(2); count X); and (11) unlawful possession of a firearm by a felon on
November 12 and 16 (§ 12021, subd. (a)(1); counts XI and XII).

The information alleged that Mesa had six prior felony convictions,
three of which were prior prison convictions and one of which was a prior
strike within the meaning of sections 667.5, subdivision (b), and 1170.12.  It
also alleged that at the time of these offenses, Mesa had been released from
custody and was on bail.  (§ 12022.1.)  Finally, the information alleged that
Mesa personally and intentionally discharged a firearm.  (§ 12022.53,
subd. (c).)

During trial, the trial court granted a motion for acquittal as to count
IX (attempted murder of Joseph).  The jury found Mesa guilty on all

---

[1] All further statutory references are to the Penal Code unless
otherwise specified.

[2] Richard and Jason are not related.  Joseph is Mesa's brother.  We
refer to all three victims by their first names to avoid confusion and intend no
disrespect.

2

remaining counts, except count I (attempted murder of Jason). Mesa admitted that he suffered the prior convictions and that he was on bail at the time of the offenses. The court sentenced Mesa to 54 years in prison, which included a 20-year gun enhancement pursuant to section 12022.53, subdivision (c). As to the substantive crimes, the court found three aggravating factors and imposed upper term sentences on all counts. Mesa appealed. After finding numerous sentencing errors, this court remanded for resentencing. (*People v. James Isaac Mesa* (June 15, 2007, A112921) [nonpub. opn.] (*Mesa I*).) In April 2011, Mesa was resentenced to 53 years in prison.

Following the passage of Senate Bill No. 483 (2021–2022 Reg. Sess.), the California Department of Corrections and Rehabilitation identified Mesa for resentencing, and he obtained appointed counsel in 2023. The trial court recalled his sentence in 2024. During resentencing, Mesa argued that the court should further reduce his sentence by imposing the lower term on all counts based on mitigating circumstances and by striking or reducing his 20-year gun enhancement to a lesser-included enhancement. He also moved under *Romero* to dismiss his prior strike conviction.

The trial court declined to dismiss Mesa's prior strike and declined to dismiss or reduce his 20-year gun enhancement. It reimposed the upper term on all counts but struck the section 12022.5, subdivision (a)(1) enhancements as to counts II and X, the section 667, subdivision (a)(1) prior, and the two section 667.5, subdivision (b) prison priors. The court resentenced Mesa to 43 years 4 months in prison. Mesa timely appealed.

B.  Facts

The following facts are taken from *Mesa I*:

"On November 11, 2004, [Mesa] approached a victim he knew, Richard[,] . . . who was working in his workshop on Windsor Road.  [Mesa] pulled out a gun and demanded the keys to Richard's Chevy Blazer truck, at gunpoint.  After [Mesa] got the keys to the truck, he drove away, while firing his gun at Richard.  Richard then fired a gun at [Mesa], shattering the windows of the truck.  [Mesa] could not drive away very fast, because Richard had left the truck in four-wheel drive mode, which limited the top speed of the truck to about 35 to 45 miles an hour.  Richard could hear the loud revving of the engine on the truck, as [Mesa] drove off. [¶] . . . [¶]

"[Mesa] also perpetrated other offenses involving firearms in November of 2004. . . .  On November 5, 2004, [Mesa] had a dispute with Jason . . . who had just cut [his] hair.  Shortly after the haircut, Jason received a call from [Mesa]'s girlfriend, who was scared and upset because [Mesa] had a gun and was in her apartment.  Jason went to [Mesa]'s girlfriend's apartment to try to talk to [Mesa] and defuse the situation.  [Mesa] fired his gun at Jason at least three times, wounding him in the foot, forearm, and chest.

"On November 12, 2004, [Mesa] had a dispute with his own brother Joseph. . . .  [Mesa] was at his brother's home early in the morning, and Joseph told [Mesa] to leave.  [Mesa] got mad and fired a gun at Joseph at least three times, missing him.

"Finally, on November 16, 2004, [Mesa] was arrested, and he had a loaded .357 magnum revolver in his waistband." (*Mesa I, supra,* A112921.)

4

## II. **DISCUSSION**

Mesa contends that the trial court abused its discretion by: (1) failing to impose the lower term despite evidence that Mesa's psychological, physical, and childhood trauma were contributing factors in the commission of his offenses; (2) relying on aggravating factors not found true by the jury; (3) declining to dismiss Mesa's almost 30-year-old prior strike; and (4) failing to exercise informed discretion in declining to strike the gun enhancement. We find no reversible error.

### A. Relevant Procedural History

At resentencing, defense counsel argued that Mesa's prior strike and gun enhancement should be dismissed in the interests of justice. Counsel highlighted Mesa's difficult childhood, including his exposure to substance abuse, domestic violence, and homelessness "at a very early age." Counsel continued that Mesa, now 56 years old, had been in prison since 2005 and had "abstained successfully . . . for 19 years from substance use." Mesa gave a brief statement and admitted that what he did was wrong and that he "should have never been in possession of a firearm." The prosecution countered that Mesa was 37 years old when he was sentenced and that his lengthy criminal history as a juvenile and adult was notable for its extensive violence. The prosecution also noted that Mesa's prior strike conviction involved "sexually motivated violent conduct" against a woman where he lifted up her dress and "pinned her against the wall, . . . causing her to choke."

The trial court declined to dismiss either the prior strike or the gun enhancement. In doing so, the court stated that it applied "[t]he standard for [the] *Romero* motion." It explained that Mesa had "a long and continuous period of criminal and violent behavior," which "start[ed] in 1981 as a

5

juvenile and [went] up until he went to prison for the current offenses." It continued that Mesa's offenses involved shooting at "three different victims, one of whom was his brother," in the span of a week.

Defense counsel next asked the trial court to impose the lower term on the principal count based on the mitigating circumstances of Mesa's childhood trauma and abuse. The prosecutor again opposed based on Mesa's lengthy criminal history and argued that various aggravating factors justified the imposition of the upper term. The court agreed, reaffirming the aggravating factors that were found true by the court at Mesa's resentencing in 2011: (1) that Mesa "engaged in very violent conduct, which indicates a very serious danger to society;" (2) that his "prior conviction[s] as an adult and the sustained petitions in juvenile proceedings are numerous and . . . of increasing seriousness;" and (3) "when [Mesa] was given opportunities on grants of probation and parole, they were unsuccessful or unsatisfactory."

The trial court reasoned that Mesa's childhood history did not "give any excuse to the fact of [Mesa's] violent and completely dangerous situation that was going on" in November 2004. It then concluded that "[w]itnessing domestic violence would teach you to act out . . . in a violent manner in a domestic-type relationship, but it [does not] explain going out in public and carjacking a guy and shooting him three times and going in your brother's backyard and having a gun and shooting at him when he told you to get out of there." The court further noted that Mesa's early exposure to illegal drugs did not "excuse[ ] or . . . explain the behavioral issues" of "act[ing] out in a way that was dangerous and disregarding the safety of people in our public." It held that the upper term was appropriate given that "the aggravating factors [were] so serious."

B. <u>Lower Term on the Principal Count</u>

Mesa contends that the trial court abused its discretion by declining to find that his psychological, physical, or childhood trauma were contributing factors in the commission of his offenses. We disagree. The court not only acknowledged that Mesa "had a very rough childhood" that "resulted in a lot of trauma," it also reasonably concluded that this trauma did "not explain that behavior."

1. *Law and Standard of Review*

Effective January 1, 2022, section 1170, subdivision (b)(6) provides that "unless the [trial] court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence." (Sen. Bill No. 567 (2021–2022 Reg. Sess.) § 1.3.) "[T]he mere fact a defendant . . . has suffered past trauma is insufficient." (*People v. Knowles* (2024) 105 Cal.App.5th 757, 765 (*Knowles*).) Instead, the trauma must be "a *contributing factor* in the commission of the offense." (§ 1170, subd. (b)(6), italics added.)

"Discretionary sentencing decisions, such as whether 'the aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of justice' [citation][,] are reviewed for an abuse of discretion." (*People v. Salazar* (2023) 15 Cal.5th 416, 428, fn. 8 (*Salazar*).) Under this standard, "we will not disturb [the trial court's] ruling unless the court exercised its discretion in an arbitrary, capricious, or patently absurd manner that results in a manifest miscarriage

7

of justice." (*People v. Parra Martinez* (2022) 78 Cal.App.5th 317, 322 (*Parra Martinez*).)  The ruling "will be upheld so long as there is a reasonable or even fairly debatable justification under the law for the court's decision." (*Ibid.*)

> 2. *Analysis*

Although the term "contributing factor" in section 1170, subdivision (b)(6), is not defined, it can be something "less than a significant factor." (*People v. Banner* (2022) 77 Cal.App.5th 226, 241.)  This, however, does not mean, as Mesa proposes, that the factor can be as minimal as having " 'some connection, *however slight,*' " in the crime's commission.[3]  As we explained in *People v. Fredrickson* (2023) 90 Cal.App.5th 984, 993 (*Fredrickson*), a defendant bears the burden of establishing that a purported mitigating circumstance is a "contributing factor" under section 1170, subdivision (b)(6). And while we did not expressly address the showing that is required, we did conclude that the defendant made the requisite showing by providing documentation to support his service-related posttraumatic stress disorder (*Fredrickson,* at p. 989) and " 'argued extensively at sentencing that his . . . crimes were the *byproduct* of his military service' " (*id.* at p. 994, italics added).  In doing so, we recognized that a defendant must, at a minimum, provide *some* evidence that a mitigating circumstance contributed to his offense.  With this understanding, we find that the trial court did not abuse its discretion in finding that Mesa's trauma and substance abuse were not contributing factors in the commission of his crimes.

As a threshold matter, the trial court reasonably concluded that Mesa's

---

[3] Mesa quotes from Couzens et al., Sentencing California Crimes (The Rutter Group 2023) section 12:7 to support this " 'however slight' " formulation.  But Couzens cites no authority to support it.  We therefore decline to adopt it.

criminal acts were largely attributable to reasons other than his trauma. For example, Mesa himself "intimated a general dislik[e] of [Joseph] and admitted to choking [him] in the past." As for Mesa's armed carjacking of Richard, Richard allegedly owed Mesa money for marijuana. Finally, as for his assault of Jason, Mesa explained to his probation officer that he had taken Jason's girlfriend back to his apartment after Jason "intimated that [Mesa] could have sex with her." After Jason showed up at Mesa's apartment and began calling him names, Mesa " 'plugged [Jason] in the fucking foot' " in response to Jason saying " 'You ain't going to fucking shoot me.' " Given these explanations for Mesa's criminal offenses, the trial court did not abuse its discretion in finding that Mesa's childhood history and trauma were not contributing factors to his "very aggressive" offenses that included "[shooting] at three different people" in the span of a week.

In any event, defense counsel *never* explained how Mesa's childhood history or trauma contributed to his offenses, and we found, and Mesa cites, nothing in the record to suggest that the trial court's discounting of Mesa's childhood trauma was "arbitrary, capricious, or patently absurd." (*Parra Martinez*, *supra*, 78 Cal.App.5th at p. 322.) Citing articles and studies linking childhood exposure to violence to adult criminality, Mesa counters that substantial evidence does not support the court's conclusion that his trauma was not a contributing factor to his crimes. But none of these articles or studies were presented to the court and cannot now be used to argue that the evidence does not support the court's conclusion. (See *People v. Hin* (2025) 17 Cal.5th 401, 451 [our review for substantial evidence is limited to *the record* below].) Regardless, we do not find that the court's repeated conclusion that Mesa's childhood trauma did not explain or excuse his extremely violent criminal act resulted in a "miscarriage of justice."

9

(*Parra Martinez*, at p. 322.)

Mesa further contends that the trial court "ignored [his] exposure to violence *outside* the familial setting," such as the violence he witnessed and experienced at the California Youth Authority (CYA). At resentencing, the court did not mention the violence Mesa encountered at the CYA even though it did comment that "[w]itnessing domestic violence would teach you to act out . . . in a violent manner in a domestic-type relationship, but it [does not] explain going out in public" committing carjacking and shooting multiple individuals. But this omission does not help Mesa because "we presume on a silent record the court properly exercised its discretion." (*People v. Frazier* (2020) 55 Cal.App.5th 858, 868.) Our decision to do so here is reinforced by Mesa's references to his experiences at the CYA in his resentencing brief, which the court "reviewed."

Despite this, Mesa argues that the trial court's reference to "violence in the *domestic* context implies that it did not consider [his] exposure in the non-domestic context." We are unpersuaded. At the hearing, the only violence raised by defense counsel was Mesa's exposure "to domestic violence at a very early age," including "sexual abuse within his own family." Thus, the court reasonably limited its comments to that domestic violence. In any event, the court's omission does not mean that it *ignored* Mesa's exposure to violence at the CYA in exercising its discretion. (See *Knowles, supra*, 105 Cal.App.5th at pp. 768–769 [even if the trial court "did not mention all of the mitigating evidence" during a sentencing hearing, we presume that it "properly considered such evidence 'unless the record affirmatively reflects otherwise' "].)

But even if the trial court had failed to consider Mesa's exposure to violence at the CYA, we still would not reverse. The presumption in favor of

the lower term does not apply if the court finds that the "aggravating circumstances outweigh the mitigating circumstances" such that "imposition of the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6).) Here, the court highlighted three aggravating factors: (1) Mesa engaged in violent conduct indicative of a serious danger to society; (2) his prior convictions as an adult and sustained petitions as a juvenile were numerous and increasing in seriousness; and (3) his prior performance on probation or parole was unsatisfactory. It then weighed these factors against the mitigating circumstances, including Mesa's childhood history and trauma, and concluded that the upper term was still appropriate "because the aggravating factors are so serious." It also repeatedly stated that Mesa's rough childhood did *not* excuse his extremely violent conduct. Thus, regardless of the violence Mesa encountered at the CYA, the court would have found that imposition of a lower term would be contrary to the interests of justice.

Finally, Mesa contends that the trial court abused its discretion by not finding that Mesa's drug use and sales were contributing factors in the commission of his offenses. We reject this argument. Although we agree that drug use or sales may be connected to psychological, physical, or childhood trauma, they are not required to be independently considered under section 1170, subdivision (b)(6). Regardless, the court found that Mesa's actions were more "behavioral issues" than "methamphetamine-[fueled] behavior." And we find that the court did not abuse its discretion in making that finding.

C. Aggravating Factors Not Found True By Jury

The trial court imposed the upper term based on three aggravating factors that the court, but not a jury, found true at Mesa's previous

11

resentencing in 2011.  Mesa contends that the court violated section 1170 and the Sixth Amendment by relying on aggravating factors that were not found true by a jury.  After reviewing the court's discretionary sentencing choices for abuse of discretion (*Salazar*, *supra*, 15 Cal.5th at p. 428, fn. 8) and its legal conclusions de novo (*People v. Grimes* (2016) 1 Cal.5th 698, 712), we do not agree.

Effective January 1, 2022, section 1170, subdivision (b) provides that when a "statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term" unless "there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(1) & (2); Sen. Bill No. 567 (2021–2022 Reg. Sess.) § 1.3.)  In light of this statutory language, our high court held that "a Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence." (*People v. Lynch* (2024) 16 Cal.5th 730, 768 (*Lynch*).)  And this "violation is prejudicial unless an appellate court can conclude beyond a reasonable doubt that a jury would have found true all of the aggravating facts relied upon by the trial court to justify an upper term sentence." (*Ibid*.)

At the same time, section 1172.75, subdivision (d)(4) provides that, in resentencing proceedings, "[u]*nless the court originally imposed the upper term*," it may not impose the upper term "unless there are circumstances in aggravation that justify" it, "and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (Italics added.)  The italicized language

12

appears to establish that a trial court may rely at resentencing on aggravated circumstances properly found by a court before January 1, 2022, the effective date of the amended version of section 1170, subdivision (b), in deciding whether to impose the upper term.

Shortly after *Lynch* was decided, the Third District Court of Appeal reached this very same conclusion in *People v. Brannon-Thompson* (2024) 104 Cal.App.5th 455 (*Brannon-Thompson*).  Based on the "unambiguous language" of section 1172.75, subdivision (d)(4), the Third District held that the heightened factfinding requirement of section 1170, subdivision (b) applies "*only* if the trial court is imposing the upper term *for the first time* at a section 1172.75 resentencing." (*Brannon-Thompson*, at pp. 466–467, italics added.)  Thus, section 1172.75, subdivision (d)(4) carves out "an exception to the general rule that the . . . court must apply ameliorative changes in the law" at resentencing.  (*Brannon-Thompson*, at p. 467.)

The Sixth District Court of Appeal, however, disagreed with *Brannon-Thompson*, concluding that "reading [such] an exemption into section 1172.75, subdivision (d)(4) . . . and thereby allowing a court to resentence a defendant to an upper term sentence without proof beyond a reasonable doubt of aggravating factors, would run afoul of the Sixth Amendment implications identified in *Lynch*." (*People v. Gonzalez* (2024) 107 Cal.App.5th 312, 330 (*Gonzalez*).)  The Sixth District conceded that "the plain language of section 1172.75, subdivision (d)(4), on its face, could be interpreted as not requiring proof of aggravating factors before reimposing an upper term sentence." (*Id*. at pp. 328–329.)  It, however, relied on the doctrine of constitutional avoidance in finding that it "simply *restrict*[*ed*] *the scope of defendants eligible to receive the upper term* at resentencing to those who previously received the upper term, instead of creating a condition or

13

exception independently justifying the imposition of the upper term." (*Id.* at p. 329.)[4]

Mesa urges us to follow *Gonzalez* and find that the trial court abused its discretion by relying on aggravating factors that were not found true by a jury or admitted by Mesa. We, however, decline to do so for the reasons we stated in *People v. Mathis* (2025) 111 Cal.App.5th 359 (*Mathis*), review granted August 13, 2025, S291628. There, we explained that imposing the upper term at resentencing without "heightened factfinding requirements" does not violate the Sixth Amendment where the defendant was originally sentenced pursuant to a "prior version of section 1170, subdivision (b)" that "fully complied with the Sixth Amendment." (*Mathis*, at p. 373.) Because the "prior scheme authorized the imposition of upper term sentences without any additional fact-finding," there can be no constitutional violation under the reasoning of *Lynch*.[5] (*Mathis*, at p. 373.)

Here, Mesa was resentenced to the upper term in 2011 pursuant to the same version of section 1170, subdivision (b) as the one in *Mathis* that "fully complied with the Sixth Amendment." (*Mathis*, *supra*, 111 Cal.App.5th at p. 373.) Thus, the trial court did not have to engage in any heightened factfinding in order to sentence Mesa to the upper term based on the court's findings in 2011. (*Ibid.*) That Mesa was sentenced in 2005 under a version of the statute that the United States Supreme Court later found unconstitutional in *Cunningham v. California* (2007) 549 U.S. 270

---

[4] Our high court granted review to resolve this conflict between *Brannon-Thompson* and *Gonzalez*. (See *People v. Eaton* (Mar. 14, 2025, C096853) [nonpub. opn.], review granted May 14, 2025, S289903.)

[5] At that time, the sentencing scheme gave trial courts broad discretion to choose between the lower, middle, and upper terms. (§ 1170, former subd. (b), enacted by Stats. 2007, ch. 3, § 2.)

(*Cunningham*), is of no moment. Because we reversed that sentence under *Cunningham* and remanded for resentencing (*Mesa I, supra,* A112921), we "restore[d]" Mesa "to his original position as if he had never been sentenced" (*Van Velzer v. Superior Court* (1984) 152 Cal.App.3d 742, 744). His illegal sentence in 2005 therefore had no bearing on his new sentence in 2011.

D. Dismissal of Prior Strike Conviction

Mesa contends that the trial court erred when it refused to dismiss his prior strike—which is now almost 30 years old—under section 1385 because the court failed to consider his rehabilitation, his abstinence from substance use, and the remoteness of his offenses—which occurred 20 years ago. Reviewing the court's decision for abuse of discretion (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*)), we reject Mesa's arguments.

The "Three Strikes" law is "intended to restrict [trial] courts' discretion in sentencing repeat offenders." (*Romero*, *supra*, 13 Cal.4th at p. 528.) When a defendant is convicted of a felony and it "is pleaded and proved that he has committed one or more prior felonies defined as 'violent' or 'serious,' sentencing proceeds under the Three Strikes law." (*Id.* at p. 505.) That law "establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court 'conclud[es] that an exception to the scheme should be made because, for *articulable reasons* which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme.' " (*People v. Strong* (2001) 87 Cal.App.4th 328, 337–338 (*Strong*), disapproved on other grounds in *People v. Dain* (2025) 18 Cal.5th 246, 265, fn. 5, italics added.)

Thus, for the trial court to dismiss a prior strike, "the circumstances must be '*extraordinary* . . . by which a career criminal can be deemed to fall

15

outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record.' " (*Carmony*, *supra*, 33 Cal.4th at p. 378, italics added.) In other words, there must be circumstances "where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme." (*Ibid*.) And in determining whether those circumstances exist, "[p]rior felonies qualifying as 'serious' or 'violent' are taken into account *regardless* of their age." (*Romero*, *supra*, 13 Cal.4th at p. 505, italics added.)

Here, the trial court declined to dismiss Mesa's prior strike due to his "long and continuous period of criminal and violent behavior" from "1981 as a juvenile . . . until he went to prison for the current offenses." Although Mesa is now 56 years old and has been in prison since 2005, he was 37 years old and well into his adulthood when he committed the offenses in this case. He has consistently engaged in violent criminal conduct for *most* of his life, including "sexually motivated violent conduct" against at least one woman. Given Mesa's violent criminal history and the seriousness of his offenses, the court did not err in concluding that there were no extraordinary circumstances to take Mesa outside the spirit of the Three Strikes law. (*People v. Williams* (1998) 17 Cal.4th 148, 161 [under *Romero*, a defendant's "present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects" are relevant].)

Further, the remoteness of Mesa's current offenses and prior strike do not compel a contrary conclusion. (See *Strong, supra*, 87 Cal.App.4th at p. 342 ["remoteness alone cannot take a defendant outside the spirit of the very law that expressly rejects remoteness as a basis for avoiding the law"].) Finally, Mesa's abstinence of "19 years from substance use" while in prison does not outweigh his lengthy and violent criminal history. That history

16

included shooting at "three different victims, one of whom was his brother," in the span of a week. Therefore, the court did not abuse its discretion in denying Mesa's *Romero* motion.

### E.  Dismissal of Firearm Enhancement

Mesa argues that the trial court failed to exercise *informed* discretion when it refused to dismiss his gun enhancement because it applied the stricter *Romero* standard, rather than the correct standard articulated in section 1385, subdivision (c).  Although the court did state that it was applying "the same [*Romero*] analysis for the firearm enhancement," remand is unnecessary because it is clear from the record that the court would have reached the same conclusion under the correct standard.

"We review a trial court's order denying a motion to dismiss a sentence enhancement under section 1385 for abuse of discretion."  (*Nazir v. Superior Court* (2022) 79 Cal.App.5th 478, 490.)  In cases where the trial court did not exercise " ' " 'informed discretion' " ' " because it was " ' "unaware of the scope of its discretionary powers," ' " remand is appropriate " 'unless the record "clearly indicate[s]" ' " that the . . . court would have reached the same conclusion " ' "even if it had been aware that it had such discretion." ' " (*Salazar, supra,* 15 Cal.5th at p. 424.)

Section 1385, subdivision (c)(1) provides that "[n]otwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute."  "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement,

unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).)

Section 1385, subdivision (c), however, "does not erect a rebuttable presumption in favor of dismissal that can only be overcome by a finding that dismissal endangers public safety." (*People v. Walker* (2024) 16 Cal.5th 1024, 1033 (*Walker*).) Although the enumerated mitigating circumstances "strongly favor dismissing the enhancement" in the absence of such a finding, "ultimately, the [trial] court must determine whether dismissal is in furtherance of justice." (*Id.* at p. 1036.) Relevant and credible evidence of aggravating factors, for example, may "neutralize the 'great weight' of the mitigating circumstances." (*Ibid.*)

Mesa contends that there are three mitigating circumstances that should have triggered the presumption in favor of dismissal of his gun enhancement if the trial court had properly applied section 1385, subdivision (c). Those circumstances are: (1) "[t]he application of an enhancement could result in a sentence of over 20 years;" (2) "[t]he current offense is connected to mental illness;" and (3) "[t]he current offense is connected to prior victimization or childhood trauma." (§ 1385, subd. (c)(2)(C)–(E).) But the court's purported failure to apply these mitigating circumstances does not warrant reversal here.

First, it is clear from the record that the trial court would *not* have found that Mesa's mental illness, prior victimization, or childhood trauma were mitigating circumstances under section 1385, subdivision (c). To trigger the presumption in favor of dismissal of an enhancement, a court must find that mental illness, prior victimization, or childhood trauma is "connected to" the "current offense" (§ 1385, subd. (c)(2)(D) & (E))—i.e., that it "*substantially contributed* to the defendant's involvement in the

18

commission of the offense" (§ 1385, subd. (c)(5) & (6), italics added).  As explained above, the court did not abuse its discretion in finding that Mesa's psychological, physical, or childhood trauma were not contributing factors to his current offenses (§ 1170, subd. (b)(6)).  And if, as Mesa contends, his mental illness is related to his substance abuse, the court did not abuse its discretion in finding that his offenses were "behavioral issues rather than drug issues."  In light of these express findings, there is no question that the court could and would have found that Mesa's mental illness, prior victimization, and childhood trauma did *not* substantially contribute to the commission of his offenses.

Second, although the enhancement resulted in a sentence of over 20 years (§ 1385, subd. (c)(2)(C)), the record clearly indicates that the trial court would not have found that "dismissal [was] in furtherance of justice" in light of the "aggravating factors [that] neutralize the 'great weight' of the mitigating circumstances." (*Walker, supra*, 16 Cal.5th at p. 1036.)  In discussing the aggravating factors, the court emphasized the serious nature of Mesa's current offenses as well as the violent nature of his many prior convictions.  Indeed, the court highlighted Mesa's "long and continuous period of criminal and violent behavior," which included "abhorrent" "violence toward[s] [a] woman."  It also underscored the serious nature of Mesa's offenses, which involved "three different victims" who "were shot at and shot" in the span of a week.  Accordingly, reversal of the court's refusal to dismiss Mesa's gun enhancement is not warranted here.

### III.  DISPOSITION

The judgment is affirmed.


CHOU, J.


19

We concur.

JACKSON, P. J.
SIMONS, J.

A171120/ *P. v. Mesa*